UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>WAYLEN SHERMAN BLOCK,<br><br>　　　　　Defendant. | CR. 17-50068-JLV<br><br>ORDER |

## INTRODUCTION

Defendant Waylen Sherman Block pled guilty to one count of receipt of child pornography by a previous sex offender, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1). (Docket 64). The government moved the court to order defendant to pay $47,000 to six victims of child pornography. (Docket 68). The court sentenced defendant on August 10, 2018, but deferred its restitution order pending supplemental briefing regarding the impact of defendant's alleged indigence on the mandatory restitution. (Dockets 78 & 81). The court denied the government's restitution request because it "failed to provide any evidence demonstrating defendant possessed images of these specific named victims." (Docket 88 at p. 6). The government moved for reconsideration of the court's ruling in light of evidence it provided with the motion showing defendant possessed images of the named victims. (Docket 91). Defendant asserts the new government evidence is insufficient to show he possessed images of the named victims and that, even if he did possess such

images, his role in their loss is attenuated. (Docket 97). For the reasons given below, the court grants the government's motion and orders defendant to pay restitution to his victims.

**ANALYSIS**

I.  **Impact of New Child Pornography Restitution Law**

On December 7, 2018, the President signed into law the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 ("the Act"). Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. 115-299, 132 Stat. 4383 (Dec. 7, 2018). The Act revises 18 U.S.C. § 2259, the statute under which the government seeks restitution from defendant. Under the Act, the court must "determine the full amount of the victim's losses that were incurred or are reasonably projected to be incurred by the victim as a result of the trafficking in child pornography depicting the victim." 18 U.S.C. § 2259(b)(2)(A). After making that determination, the court must "order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000." Id. at § 2259(b)(2)(B). As it relates to the statute of conviction here, the Act caps restitution at $35,000. Id. at § 2259A(a)(2). The Act supersedes the Supreme Court's interpretation of § 2259 requiring district courts to award restitution commensurate with the defendant's causal role in the victim's losses without any mandatory amount. Paroline v. United States, 572 U.S. 434, 458 (2014).

Because the Act became law during the restitution motion's pendency, the court must determine whether the Act applies to the motion—that is, whether the Act applies retroactively. The "sense of Congress" is that the Act is not retroactive. 18 U.S.C. § 2259B(d). One appellate court has declined to apply the Act retroactively. United States v. Monzel, 930 F.3d 470, 476 n.1 (D.C. Cir. 2019). The court concludes the Act does not govern defendant's case.

The Ex Post Facto Clause of the Constitution, which forbids Congress from enacting any "law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed," would seem to be a logical starting point for this inquiry. Peugh v. United States, 569 U.S. 530, 532-33 (2013) (quoting Calder v. Bull, 3 Dall. 386, 390 (1798)). There is a conflict in controlling precedent of the United States Court of Appeals for the Eighth Circuit on the question of whether restitution is a criminal penalty or a civil remedy. In 2002, Judge Bye wrote a unanimous panel opinion holding "restitution is a criminal 'penalty.'" United States v. Ross, 279 F.3d 600, 609 (8th Cir. 2002). As far as the court can determine, this holding has never been expressly overruled.

However, in United States v. Carruth, the Eighth Circuit held restitution "is essentially a civil remedy created by Congress and incorporated into criminal proceedings for reasons of economy and practicality." 418 F.3d 900, 904 (2005). In dissent, Judge Bye again stated restitution is a criminal penalty. Id. at 906. However, neither Judge Bye nor the majority analyzed this question or

3

acknowledged the conflict. The Eighth Circuit has since followed the Carruth majority in labeling restitution as a civil penalty.[1] United States v. Thunderhawk, 799 F.3d 1203, 1209 (8th Cir. 2015).

When confronted with an intracircuit split in authority, courts are directed to follow the earliest panel opinion "as it should have controlled the subsequent panels that created the conflict." T.L. ex rel. Ingram v. United States, 443 F.3d 956, 960 (8th Cir. 2006). If restitution is a criminal penalty, as articulated in Ross and earlier cases, the Ex Post Facto Clause governs and forbids the court from changing the punishment applicable to defendant by imposing a restitution floor. The Act sets a $3,000 floor for restitution awards, while the Supreme Court's previously governing interpretation of the restitution statute sets no such floor. In fact, the court has awarded restitution in amounts under $3,000 in prior child pornography cases. See United States v. Haggerty, CR. 14-50046, (Docket 217) (D.S.D. Oct. 15, 2018). The Ex Post Facto Clause prohibits applying the Act retroactively.

Interpreting restitution as a civil penalty leads to the same result. "[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." Landgraf v. USI Film Prods., 511 U.S. 244, 265 (1994).

---

[1]The Southern Division of this court held that restitution "is criminal punishment, not a civil sanction" in an Ex Post Facto Clause analysis. United States v. Johnson, 145 F. Supp. 3d 862, 866 (D.S.D. 2015) (citing Ross, 279 F.3d at 609).

> A two-step test determines whether a statute may be applied retroactively. At the first step, we discern whether Congress has expressly prescribed the statute's intended reach. If so, our inquiry ends. At the second step, we examine whether the statute would have a retroactive effect; that is, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would do any of these things, the presumption is that the statute does not govern, absent clear congressional intent otherwise.

Molina Jerez v. Holder, 625 F.3d 1058, 1069 (8th Cir. 2010) (internal quotations and citations omitted).

As to the first step of the inquiry, the court notes Congress expressed its sense that the Act not be applied retroactively. 18 U.S.C. § 2259B(d). However, the court cannot determine whether the sense of Congress is too indefinite to count as an express prescription against retroactivity and proceeds to step two of the inquiry. Because the Act would "increase [defendant's] liability for past conduct," the court holds the Act "would have a retroactive effect" were the court to apply it to the government's restitution motion. Molina Jerez, 625 F.3d at 1069. The presumption against retroactive legislation thus governs. The court declines to apply the Act to the pending motion.

## II. Government's Motion for Restitution

At the outset, the court must reject the government's argument that it bore no responsibility to prove restitution related facts. The government asserted in its motion asking the court to reconsider its prior restitution denial that it is "unfair" to require it to prove defendant possessed images of the named victims. (Docket 91 at p. 2). In the government's view, it did not have to prove any

5

connection between defendant and the named victims because the topic had not arisen as a disputed matter in the case.[2] Id. But it is the government's burden to prove "the amount of restitution[.]" United States v. Miller, 419 F.3d 791, 792 (8th Cir. 2005). It is in no way unfair to hold the government to its burden, regardless of whether or not defendant's possession of images of specific named victims had previously arisen as an issue in the case.

The most cursory review of the applicable law on this topic would have revealed the necessity of showing, at the very least, defendant possessed images of the named victims. Governing precedent requires an analysis of defendant's connection to the victim's losses. See Section II.A, infra. This analysis is impossible to undertake without even knowing how many images of the named victims defendant possessed. The record now provides sufficient information to determine appropriate restitution amounts, if only barely. However, the court concludes the government's wholesale outsourcing of the crucial task of

---

[2]The government also asserts defendant did not contest he possessed images of the named victims because discovery materials demonstrated he possessed those images. (Docket 91 at p. 2). The court has no access to discovery materials unless they are filed on the record. The government is reminded the court cannot merely assume unproven facts impacting a defendant's criminal punishment.

substantiating defendant's role in the victims' losses to victims' counsel approaches defaulting on its duty to prove restitution amounts.[3]

The government seeks $47,000 in restitution from defendant in payment to six child pornography victims. (Docket 68). Specifically, the government seeks $12,000 for Angela, $10,000 for Violet, the victim of the "At School" child pornography series, $10,000 for Lily, the victim of the "Vicky" series, and $5,000 each to Pia, Ava, and Mya, the victims of the "Sweet Sugar" series.[4] Id. The government filed voluminous documentation, compiled by victims' counsel, of the harms suffered by each victim to justify its request. See Dockets 68-1 – 68-5. The government, arguing that defendant "both produced and distributed images of child pornography[,]" suggests that an amount greater than $3,000 per victim is appropriate. (Docket 83 at p. 3). Defendant argues the government produced no evidence regarding the extent to which his conduct contributed "to the proximate cause of each of the individual victim's losses[.]" (Docket 85 at p. 2). In his latest briefing, the defendant maintains no restitution is appropriate because of the lack of evidence connecting him to the victims. (Docket 97 at p. 2).

---

[3]The court appreciates the insight victims' counsel provided with their documentation. But that documentation, while extensively proving victims' losses, does little to show defendant's causal role in those losses. That task is best completed by government counsel which, unlike victims' counsel, has actual knowledge of defendant's offense conduct.

[4]Each of these names are pseudonyms for the actual victims.

### A. Legal standard[5]

"Under 18 U.S.C. § 2259(a), a district court shall order restitution for offenses that involve the sexual exploitation of children and child pornography in particular." United States v. Beckmann, 786 F.3d 672, 682 (8th Cir. 2015). "The government bears the burden of proving the amount of restitution based on a preponderance of the evidence." United States v. Hoskins, 876 F.3d 942, 945 (8th Cir. 2017). The court must order restitution under this statute "only to the extent that the defendant's offense proximately caused the victim's losses." Beckmann, 786 F.3d at 682. Losses a victim may have suffered include: medical services relating to physical, psychiatric or psychological care; physical and occupational therapy or rehabilitation; necessary transportation, temporary housing and child care expenses; lost income; reasonable attorneys' fees, as well as other costs incurred; and any other relevant losses incurred by the victim. 18 U.S.C. § 2259(c)(2). The court "may not decline to issue an order" for restitution based on "the economic circumstances of the defendant" or "the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source." 18 U.S.C. § 2259(b)(4).

"[B]ecause child pornography victims suffer 'continuing and grievous harm as a result of knowing that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she [or he] endured,' all persons who reproduce, distribute, or possess child pornography

---

[5]The case law cited here reflects judicial interpretation of § 2259 prior to the Act's revisions.

8

play a part in 'sustaining and aggravating this tragedy.'" Beckmann, 786 F.3d at 682 (quoting Paroline, 572 U.S. at 457) (alterations omitted). "[E]ven mere possessors of child pornography cause proximate harm to victims of child pornography." Id. (citing Paroline, 572 U.S. at 456-57). The central "question in these cases is determining the appropriate *amount* of restitution—i.e. how much of the victim's losses are attributable to the defendant's conduct." Id. (emphasis in original).

The Paroline Court "found that § 2259 did not require but-for causation, and that restitution could be awarded in an amount 'that comports with the defendant's relative role in the causal process that underlies the victim's general losses.'" Hoskins, 876 F.3d at 946 (quoting Paroline, 572 U.S. at 458). To guide the district court's causal analysis, the Court explained:

> There are a variety of factors district courts might consider in determining a proper amount of restitution, and it is neither necessary nor appropriate to prescribe a precise algorithm for determining the proper restitution amount at this point in the law's development. Doing so would unduly constrain the decisionmakers closest to the facts of any given case. But district courts might, as a starting point, determine the amount of the victim's losses caused by the continuing traffic in the victim's images . . . , then set an award of restitution in consideration of factors that bear on the relative causal significance of the defendant's conduct in producing those losses.

Paroline, 572 U.S. at 459-60 (internal citation omitted). The factors Paroline provided as guidance include:

1. the number of past criminal defendants found to have contributed to the victim's general losses;

2. reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses;

3. any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted);

4. whether the defendant reproduced or distributed images of the victim;

5. whether the defendant had any connection to the initial production of the images;

6. how many images of the victim the defendant possessed; and

7. other facts relevant to the defendant's relative causal role.

Id. at 460 (numbering added and spacing altered for readability). Emphasizing "[t]hese factors need not be converted into a rigid formula," the Court stated they

> should rather serve as rough guideposts for determining an amount that fits the offense. The resulting amount fixed by the court would be deemed the amount of the victim's general losses that were the 'proximate result of the offense' for purposes of § 2259, and thus the 'full amount' of such losses that should be awarded.

Id.

### B. Angela

The government seeks $12,000 in restitution for the victim Angela. (Docket 68). This request is supported by documentation from Angela's attorney. (Docket 68-1). Experts consulted by Angela's attorney estimate her treatment needs will total between $183,000 and $293,000 over the next twenty years and her projected loss of earning capacity totals $812,000. Id. at p. 36. The attorney costs associated with receiving restitution from defendant would be $4,625. Id. These costs total at least $999,625, using the lower estimate of

Angela's treatment costs. Angela's attorney—and, apparently, the government, which did not submit any justification of its own specifically as to Angela's restitution request and appears to simply adopt the arguments of Angela's attorney—contends $12,000 in restitution from defendant is appropriate as his "relative causal role" in the harms done to Angela. Id. Neither Angela's attorney nor the government provided any recent information concerning whether other defendants with images of Angela have been ordered to pay restitution, have paid restitution, or are likely to pay restitution.[6]

Based on the documentation provided by Angela's attorney, the court finds Angela's losses are as she alleges. Determining how much of Angela's losses defendant proximately caused is a more difficult question. The parties agree defendant possessed three images of Angela.[7] (Dockets 91 at p. 2 & 97 at p. 2). Neither party provides additional details about whether defendant further distributed the images of Angela.

The government asserts defendant "produced and distributed images of child pornography." (Docket 83 at p. 3). It asks for a higher restitution amount based on these aggravating factors. Id. In his factual basis statement, defendant admitted to reproducing child pornography by photographing his

---

[6]In 2014, Angela's mother stated she had received no restitution "from any of the over 3,000" individuals possessing images of Angela. (Docket 68-1 at p. 6).

[7]In his brief, defendant first asserts "there is still no evidence that [he] possessed images/videos of the claimed victims" but in the next paragraph concedes he possessed the images asserted by the government. (Docket 97 at p. 2).

11

erect penis in front of an image of already-extant child pornography. (Docket 58 at p. 2). Defendant further admitted to distributing these new images. Id. at p. 3. However, the United States Probation Office noted in defendant's presentence investigation report that the discovery in this case contained no evidence corroborating that portion of the factual basis statement. (Docket 74 at ¶ 18).

Regardless of whether defendant produced or distributed child pornography, the government produced no evidence linking these acts to Angela or the other named victims. In the absence of that evidence, the court cannot consider acts of production or distribution as a proximate cause of Angela's harm. The court only considers how much harm defendant caused to Angela by possessing three images of her. The number of images is also the only Paroline factor the government or Angela's attorney addressed. Under these circumstances, the court finds a restitution award of $1,250 is an appropriate estimation of the harm defendant proximately caused to Angela by possessing three images of her.

**C.     Violet**

The government requests $10,000 in restitution for Violet, the victim portrayed in the "At School" child pornography series. (Docket 68 at p. 1). The government supported this request with documentation prepared by Violet's attorney. (Docket 68-2). Violet's attorney estimates her total losses are $794,118.35. Id. at p. 7. This amount includes future counseling costs of

$72,400 - $118,025, future medical care "attributable to image exploitation and disaggregated from ordinary medical care" and $28,286.35 in attorney's fees and costs related to collecting restitution. Id. Violet's attorney provided extensive documentation supporting these figures. Based on the documentation, the court finds Violet's losses are as she alleges.

Again, the challenging question is how much of Violet's loss is attributable to defendant. The parties agree defendant possessed one 20-second video of the At School series. (Dockets 91 at p. 2, 91-1 at p. 6 & 97 at p. 2). As with Angela, the government provided no evidence linking defendant to reproducing child pornography with or redistributing Violet's image.

Violet's attorney notes that, as of May 16, 2018, 88 restitution orders have been entered in Violet's favor. (Docket 68-2 at p. 7). Violet's attorney asserts she does not know how many individuals possess her images or will possess her images in future. Id. The government likewise declined to elucidate these Paroline factors. Violet's attorney stated defendant had no part in producing the At School pornography series. Id. Under these circumstances, the court finds a restitution award of $1,000 is an appropriate estimation of the harm defendant proximately caused to Violet by possessing one 20-second video of her.

**D.    Lily**

The government requests $10,000 in restitution for Lily, the victim portrayed in the "Vicky" child pornography series. (Docket 68 at p. 1). The

13

government supported this request with documentation prepared by Lily's attorney. (Dockets 68-3 & 68-4). Lily's attorney estimates her total loss is $4,517,390.13 (Docket 68-3 at p. 3). This estimate includes $3,266,093 in "disaggregated . . . medical [expenses]," which are aggravated by the stress of her victimization, $164,475 in future counseling expenses, $53,330 in educational and vocational counseling needs & lost part-time income, $936,646 in lost past and future earnings, and $96,846 in restitution collection expenses. Id. at pp. 3, 6-7). Lily's attorney provided extensive documentation supporting these figures. Based on the documentation, the court finds Lily's losses are as she alleges.

The court must next attempt to determine how much of Lily's loss can be attributed to defendant. The parties agree defendant possessed one video of Lily from the Vicky child pornography series. (Dockets 91 at p. 1 & 97 at p. 2). The record does not disclose the length of the video. Lily's counsel states Lily has received $1,288,743.10 from 1043 restitution orders as of May 16, 2018. (Docket 68-3 at p. 3). Eight hundred forty-one defendants have paid restitution to Lily. Id. at p. 12. Lily's attorney cannot estimate how many individuals have viewed images of Lily, although she does allege the Vicky series is "one of the most prolifically traded series." Id. at pp. 4, 12. Neither Lily's attorney nor the government estimated how many individuals may possess images of Lily in the future. The record contains no evidence that defendant reproduced or redistributed child pornography depicting Lily. Under these circumstances, the

14

court finds a restitution award of $1,000 is an appropriate estimation of the harm defendant proximately caused to Lily by possessing one video of her.

**E.     Sweet Sugar**

The government requests $5,000 in restitution for each of the three victims of the "Sweet Sugar" child pornography series, who are named as Pia, Ava and Mya. (Docket 68 at p. 2). The request is based on documentation provided by the victims' attorney. (Docket 68-5). The victims' attorney estimates she has expended $10,187.13 for the children in total. Id. at p. 4. A clinical psychologist evaluated each of the victims and estimated their future counseling expenses as totaling $91,900 for Pia and $94,800 for both Ava and Mya. Id. at pp. 23, 32 & 41. The victims' attorney did not document any other losses. Based on the provided documentation, the court finds the victims' losses are as they allege.

The court again must ascertain how much of the victims' loss defendant caused. The victims' attorney states the victims have received restitution as follows: $46,691.44 for Pia; $10,564.94 for Ava; and $9,300.22 for Mya. She does not state how many defendants are paying restitution. Neither the victims' attorney nor the government state how many defendants have been convicted of viewing the victims' images, how many may be convicted in future, or how many individuals in general may view the victims' images. Neither party alleges defendant reproduced or redistributed images of these victims. The parties do agree that defendant possessed four images and eight videos of the Sweet Sugar

child pornography series. (Dockets 91 at p. 2, 91-1 at p. 7 & 97 at p. 2). The record does not disclose which victim is portrayed in the images and videos.[8]

Under these circumstances, the court finds a restitution award of $1,000 to each of the three Sweet Sugar victims is an appropriate estimation of the harm defendant proximately caused to them by possessing four images and eight videos of the Sweet Sugar series. The court makes this general award equal for each victim because the government did not demonstrate whether one or more of the victims appeared more frequently in the imagery defendant possessed.

**ORDER**

For the reasons given above, it is

ORDERED that the government's motion for reconsideration (Docket 91) is granted.

IT IS FURTHER ORDERED that the court's prior order denying the government's motion for restitution (Docket 88) is vacated.

IT IS FURTHER ORDERED that the government's motion for restitution (Docket 68) is granted. The court orders defendant to pay restitution to his victims as follows:

---

[8]In fact, the government produced no evidence demonstrating that each of the three victims appear in the images and videos defendant possessed. The record only demonstrates that defendant possessed imagery from the Sweet Sugar child pornography series as a whole. The nature of the series and the position of each individual victim within it is not explained. This is another instance of the government failing to adequately prove crucial restitution related facts.

16

1. Defendant shall pay $1,250 in restitution to Angela. Payment shall be made to Lenahan Law, P.L.L.C., F/B/O Angela, 2655 Villa Creek, Suite 222, Dallas, TX 75234.

2. Defendant shall pay $1,000 in restitution to Violet. Payment shall be made to Carol L. Hepburn in trust for Violet at 200 First Avenue West, Suite 550, Seattle, WA 98119.

3. Defendant shall pay $1,000 in restitution to Lily. Payment shall be made to Carol L. Hepburn in trust for Lily at 200 First Avenue West, Suite 550, Seattle, WA 98119.

4. Defendant shall pay $1,000 in restitution to Pia, Ava, and Mya as separate individuals. Payment shall be made to Deborah A. Bianco in trust for Pia, Ava or Mya at 14535 Bellevue-Redmond Road, Suite 201, Bellevue, WA 98007.

IT IS FURTHER ORDERED that the United States Probation and Pretrial Services Office shall prepare an amended judgment consistent with this order.

IT IS FURTHER ORDERED that the Clerk's Office shall provide a copy of this order to the United States Probation and Pretrial Services Office.

Dated January 14, 2020.

BY THE COURT:

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE