UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>WAYLEN SHERMAN BLOCK,<br><br>　　　　　　Defendant. | CR. 17-50068-JLV<br><br>ORDER |

**INTRODUCTION**

　　Defendant Waylen Block, appearing *pro se*, filed a motion for compassionate release together with a packet of his personal information, Bureau of Prisons administrative records and medical records.  (Dockets 103 & 103-1).  Pursuant to Amended Standing Order 20-06, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on his motion.  (Dockets 104-106, 118-19 & 123).

　　Mr. Block also filed two *pro se* supplements, an exhibit and a motion for the appointment of counsel.  (Dockets 107, 115, 115-01 & 120).  Mr. Block's counsel also filed a supplemental brief following the last submission of medical records.  (Docket 124).  For the reasons stated below, defendant's motion for compassionate release is denied and his motion for appointment of counsel is denied as moot.

**AMENDED STANDING ORDER 20-06**

　　Amended Standing Order 20-06,[1] captioned "Establishing a Procedure for Compassionate Release Motions Under the First Step Act," put in place "a

---

[1]See https://www.sdd.uscourts.gov/socraa.

procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(d)(l)(A), in the wake of the spread of the COVID-19 virus into the federal prison system." (ASO 20-06 at p. 1). By the standing order, the FPD and the United States Attorney for the District of South Dakota are "to place [the defendant] into one of four categories[.]" Id.

¶ 4.  Those categories are:

    a.  High Priority Cases where there exists some combination of: (i) medical issues that correspond to the categories outlined in the commentary to U.S.S.G. § 1.B.1.13; (ii) recognized COVID-19 risk factors in the inmate's medical history; and/or (iii) imprisonment in a federal facility known to have a serious COVID-19 outbreak in its population. . . .

    b.  Intermediate Priority Cases where identified medical issues and/or COVID-19 risk factors and/or institutional concerns are less extreme than High Priority Cases.

    c.  Low Priority Cases where there are no identifiable medical issues or COVID-19 risk factors.

    d.  Unknown Risk Cases where there is a lack of sufficient information to categorize the request for compassionate release.

Id.  The FPD and U.S. Attorney are to "immediately report the categorization . . . to the Clerk of Court and the Probation Office."  Id.

## MR. BLOCK'S CLASSIFICATION

The FPD and the U.S. Attorney filed a notice designating Mr. Block as an Intermediate Priority case. (Docket 104).

## FACTUAL BACKGROUND

Mr. Block pled guilty to receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1). (Dockets 64 & 81). A presentence

2

investigation report ordered by the court calculated Mr. Block's advisory guideline range as 235 to 293 months of imprisonment based on a total offense level of 37 and his criminal history category II.  (Docket 74 ¶ 77).  Because this was Mr. Block's second conviction of possession, manufacture or distribution of child pornography, the statutory minimum sentence was 15 years (180 months) up to 40 years (480 months).  Id. ¶¶ 2, 41 & 76; see also 18 U.S.C. § 2252A(b)(1).  On August 10, 2018, Mr. Block was sentenced to a term of imprisonment of 240 months followed by 10 years of supervised release.  (Docket 81 at pp. 2-3).

Mr. Block is currently an inmate at Federal Medical Center ("FMC") Devens, an administrative security medical center in Ayer, Massachusetts.[2] Fed. Bureau Prisons, https://www.bop.gov/inmateloc/ (last checked February 21, 2023).   The inmate population at FMC Devens is currently 888 persons with an additional 61 inmates in the adjacent minimum security satellite camp for a total inmate population of 949.  https://www.bop.gov.locations/ institutions/dev/ (last checked February 21, 2023).   As of February 21, 2023, there is one active COVID-19 case among inmates and 11 active cases among staff at FMC Devens.  https://www.bop.gov/coronavirus/ (last checked

---

[2] Mr. Block was originally housed at the Federal Correctional Institution ("FCI") Sandstone in Sandstone, Minnesota.  (Docket 118 at p. 2).   Because of his medical condition which will be discussed in detail later in this order, Mr. Block was transferred to FMC Devens.  (Docket 115 at p. 2).   Following completion of treatment at FMC Devens, Mr. Block was transferred to the Metropolitan Detention Center ("MDC") Brooklyn in Brooklyn, New York. (Docket 118 at p. 2).   The parties have not notified the court as to the reason for Mr. Block's transfer back to FMC Devens.

February 21, 2023). FMC Devens reported 14 deaths of inmates and no staff deaths as a result of COVID-19, and 342 inmates and 296 staff have recovered as of February 21, 2023. Id.

Mr. Block has a scheduled release date of April 28, 2034. https://www.bop.gov/inmateloc/. See also (Docket 106 at p. 1184). As of January 1, 2023, he has served approximately 29 percent of his statutory sentence, and under his current status in the BOP, Mr. Block is eligible for home detention on October 28, 2033. Id. at p. 1183. Mr. Block is 50 years old. Id. at p. 1

## MR. BLOCK'S MOTION

Mr. Block's *pro se* motion seeks compassionate release on the basis of extraordinary and compelling reasons in light of his "chronic kidney disease and anemia[3] . . . [which] classify him as 'immunocompromised[,]' [i]n concert with the relentless presence of COVID-19 and the more contagious and deadly Delta variant[.]" (Docket 103 at p. 5). "Mr. Block was admitted to the hospital with Acute Kidney injury R/T Rhabdomyomas,[4] at the same time aggravating his

---

[3]"Anemia is a condition in which you lack enough healthy red blood cells to carry adequate oxygen to your body's tissues. Having anemia, also referred to as low hemoglobin, can make you feel tired and weak. . . . Anemia can be temporary or long term and can range from mild to severe. . . . Treatments for anemia, which depend on the cause, range from taking supplements to having medical procedures." https://www.mayoclinic.org/diseases-conditions/anemia/symptoms-causes/syc-20351360 (last visited December 21, 2022).

[4]"Rhabdomyolysis is a serious syndrome due to a direct or indirect muscle injury. It results from the death of muscle fibers and release of their contents into the bloodstream. This can lead to serious complications such as renal (kidney) failure. . . . Nontraumatic causes of rhabdomyolysis include . . . [e]xtreme muscle strain[.]" https://www.webmd.com/a-to-z-guides/rhabdomyolysis-symptoms-causes-treatments (last visited December 21, 2022).

4

service connected disability . . . for Central Serus Chorioretinopathy ["CSC"], losing most of his vision in his right eye." Id. at pp. 5-6 (referencing Docket 103-1 at p. 20).  Mr. Block received a 10% disability rating from the Veteran's Administration due to his CSC.  (Docket 103-1 at p. 20).  Mr. Block complains the BOP facilities have created "excessively harsh conditions of confinement" so that "[t]he cumulative effect of these failures put [him] at an unacceptable risk of contracting COVID-19 and certainly amount to 'extraordinary and compelling reasons' for this Court to grant [his motion for] compassionate release."  (Docket 103 at pp. 5 & 10).

In the event his motion for compassionate release is denied, Mr. Block requests the court grant him a partial reduction in his sentence. Id. at p. 10. That is, he asks the court to follow district courts from the United States Court of Appeals for the Second Circuit in reducing "sentences due to the harshness of confinement, lack of programming and onerous lockdowns not contemplated by the courts at sentencing." Id. (citations omitted).  In Mr. Block's situation, he asserts the extraordinary and compelling conditions of confinement warranting a reduction in sentence include: "(1) lack of access to exercise/recreation; (2) lack of access to psychology services; (3) excessive/repeated lockdowns, due to the deliberate indifference towards [his] health and safety; (4) lack of access to law library and grievance process." Id. at p. 11.

In response, the government contends the effectiveness of the COVID-19 vaccines which mitigate the COVID-19 risk justifies denying compassionate

5

release.  (Docket 118 at p. 3) (references omitted).  Additionally, the government asserts compassionate release should be denied because Mr. Block recovered from COVID-19 despite his medical conditions.  Id. at p. 4.  The government maintains compassionate release must be denied unless the defendant fits within the framework of the Sentencing Commission's guideline policy for compassionate release.  Id. at pp. 5-7 (citing U.S.S.G. § 1B1.13 cmt. n.1).

The government acknowledges Mr. Block has "chronic kidney disease and a prior case of obesity" which "are listed in the CDC's list of conditions that could cause a person to become seriously ill if he contracts COVID-19."  Id. at p. 9 (referencing https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-condtions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html).  Also, the government acknowledges Mr. Block suffers from hypertension, although the government argues the CDC list includes "pulmonary hypertension—high blood pressure in the lungs—but not general hypertension, as placing a person at higher risk."  Id.

The government argues Mr. Block's conditions were managed at FMC Devens and following treatment his kidney disease "was . . . determined to be stable . . . . [and] 'steadily recovered.' "  Id. at p. 11 (referencing Docket 106 at p. 434).  Additionally, in custody, Mr. Block's "kidney disease would be monitored" and his kidneys' filtration function, glomerular filtration rate ("GFR"),

tracked.  Id. at p. 12.  Based on this argument, the government submits Mr. Block failed to show "he is unable to provide self-care while in prison," a critical factor in demonstrating an "extraordinary or compelling reason for release."  Id.

Addressing the § 3553(a) factors, the government argues Mr. Block's "history of possession of child pornography" and "distribution of child pornography to other individuals" produce a record that clearly shows him to pose "a risk of danger to the community."  Id. at p. 14.  These factors in the government's view "weigh against a sentence reduction."  Id. at p. 15.

In reply, Mr. Block argues "the government has ignored vaccine evading variants such as the omicron, the emergence of the BA.2 or 'stealth' omicron, and the possibility of future worse variants."  (Docket 119 at p. 1).  Mr. Block submits his "pre-existing kidney disease is a serious concern given that research on COVID-19 has observed acute kidney damage in those who have contracted the virus, and the effect that a preexisting kidney disease has on COVID-19 outcomes."  Id. at p. 5 (referencing https://www.kidney.org/coronavirus/kidney-disease-covid-19).  He contends the research shows that "[p]eople living with kidney disease, at any stage, may not have as much protection against COVID-19 — even if they are fully vaccinated."  Id. at p. 5.  Because he also developed an acute kidney injury ("AKI") in January 2021, Mr. Block submits "that patients who contracted COVID-19 and later an AKI continue to have low kidney function and that the mortality rate for these patients are higher."  Id.

With his "history of kidney disease, COVID-19 diagnosis, and his immunocompromised state," Mr. Block concludes these factors "in combination with his other health conditions—favor release." Id.

Focusing on the § 3553(a) factors, Mr. Block points out that while his offense of conviction "was serious" he "has a low criminal history, is a veteran and has [a] strong support system in place." Id. at p. 9. He contends the government failed "to consider that Mr. Block recognizes his triggers and need for help with mental health issues." Id. at p. 10. Mr. Block concludes his "advancing age, serious and chronic medical conditions, and his incarceration, make him a worthy candidate for compassionate release" followed by a term "of home confinement as a condition of supervised release." Id. at p. 11.

## ANALYSIS

### Administrative Exhaustion

Section 3582(c) permits the district court to consider an inmate's request for compassionate release after he exhausts the administrative remedies mandated by the statute. 18 U.S.C. § 3582(c)(1)(A)(i). The government does not contend Mr. Block failed to exhaust his administrative remedies. (Docket 118 at p. 2). Accordingly, the court will address the merits of Mr. Block's request.

### Extraordinary and Compelling Reasons

"Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020). That task was left to the United

8

States Sentencing Commission.  See 28 U.S.C. § 994(t).  Prior to the First Step Act, the Sentencing Commission established four categories for "extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  See id.  Those categories generally focus on the defendant's age, medical condition, family situation and any other reasons the BOP deems to be extraordinary and compelling.  U.S.S.G. § 1B1.13 comment. n.1.  The four categories have not been updated since December 2018 when the First Step Act became law.[5]

    The court previously surveyed the status of the law as to a court's authority under the First Step Act.  E.g., United States v. Thunder Hawk, CR. 14-50008, 2021 WL 253456, at *5 (D.S.D. Jan. 26, 2021); United States v. Magnuson, CR. 15-50095, 2020 WL 7318109, at *4-5 (D.S.D. Dec. 11, 2020); United States v. King, CR. 15-50050, 2020 WL 6146446, at *4-5 (D.S.D. Oct. 20, 2020).  A summary of that survey is sufficient here.

    This court retains its independent authority "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring

---

[5]Until recently the United States Sentencing Commission lacked a quorum and the newly established commission has not amended the United States Sentencing Guidelines.

before [the court] in motions for compassionate release."⁶  E.g., Magnuson, 2020 WL 7318109, at *5 (quoting United States v. Brooker, 976 F.3d 228, 237 (2d. Cir. 2020)); see also McCoy, 981 F.3d at 283 ("As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction."); United States v. Jones, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges . . . have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); and United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020) (agreeing with the Second Circuit that the Guidelines Manual "does not curtail a district judge's discretion").

---

⁶The United States Court of Appeals for the Eighth Circuit had several opportunities to address this issue but declines to do so.  United States v. Vangh, 990 F.3d 1138, 1141 n.3 (8th Cir. 2021); United States v. Loggins, Jr., 966 F.3d 891 (8th Cir. 2020) and United States v. Rodd, 966 F.3d 740 (8th Cir. 2020).  At best, the Eighth Circuit skirted resolving the issue by proclaiming "the First Step Act in 2018 did not change the discretion afforded the district court."  United States v. Marcussen, 15 F.4th 855, 859 (8th Cir. 2021) (internal citation omitted).  See also United States v. Avalos Banderas, 39 F.4th 1059, 1061 (8th Cir. 2022) ("the court did not abuse its discretion by considering whether compassionate release would reduce [defendant's] risk of contracting COVID-19 or developing complications.").

Turning to that task, the court conducted a detailed review of Mr. Block's medical records. Mr. Block's medical records confirm the following medical conditions:

- Chronic kidney disease, stage 3 unspecified. (Docket 106 at p. 2);

- Essential (primary) hypertension ("HTN").[7] Id.;

- Anemia. Id. at p. 5;

- Central serous chorioretinopathy ("CSC"). Id. at p. 9; and

- Gastro-esophageal reflux disease ("GERD") without esophagitis. Id. at p. 25.

While Mr. Block contends he had kidney disease prior to being sentenced in this court, the PSR does not support his claim. See Docket 74 ¶¶ 58 & 59. Rather, it is evident from Mr. Block's BOP medical records that he developed stage 3 chronic kidney disease as the result of rhabdomyolysis, progressing into acute renal failure with tubular necrosis instigated by excessive physical exercise, that is, 120 below the waist squats on February 12, 2021. (Docket 106 at pp. 21, 26, 109, 115, 193, 203, 207 & 434). Mr. Block's renal failure was rectified by multiple weeks of hemodialysis at both the Essentia Duluth Hospital in Duluth Minnesota, and FMC Devens. Id. at pp. 9 and 197. Hemodialysis was completed on April 28, 2021. Id. at p. 9. At the time of his initial discharge from FMC Devens on November 18, 2021, the chart reported Mr. Block's "kidney

---

[7]"High blood pressure, also called hypertension, is blood pressure that is higher than normal. . . . High blood pressure is defined as 130 or higher for the first number, or 80 or higher for the second number." https://www.mayoclinic.org › syc-20373410 (last visited December 21, 2022).

structure and function are at their new baseline, and no further specialty care is required." Id. at p. 435. His medical condition was "stable and his medical care . . . [was] lowered to a medical care level 2." Id. He was to be transferred back to his parent BOP facility with "[n]o restrictions" other than to "avoid extreme exercise, exercise in heat, and volume depletion/dehydration (the factors presumed to have caused rhabdomyolysis)." Id. Mr. Block was instructed to continue his medication for hypertension, Amlodipine. Id.; see also id. at p. 24.

Upon his return to FMC Devens in early 2022, Mr. Block was reclassified as a "Medical Care Level 3" inmate. (Docket 123 at p. 2). It appears that one of the principal reason for his transfer back to Devens was an "unintentional" weight loss of 35 pounds "in the past year." Id. at p. 4. Additionally, the medical staff was directed to watch his essential hypertension. Id. The BOP chart noted Mr. Block's "last ocular injection was in January 2022, and . . . has no record in his chart to dispute that. He is supposed to receive his injections every 4-6 weeks." Id. at p. 2. It must be noted Mr. Block refused the Moderna COVID-19 vaccine on June 28, 2022. Id. at p. 45.

Chronic kidney disease and hypertension are included on the CDC's list of risk-increasing conditions.[8] See People with Certain Medical Conditions, Ctrs.

---

[8]The CDC indicates adults of any age *are* at increased risk of severe illness from COVID-19 if they have certain conditions, including cancer . . . heart conditions (such as heart failure, coronary artery disease, or cardiomyopathies), . . . . See People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated December 6, 2022).

for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited December 21, 2022). Regardless of age, such conditions increase the risk of severe illness from COVID-19. Id. Additionally, it is also instructive that CDC guidance explains "[a] person's risk of severe illness from COVID-19 increases as the number of underlying medical conditions they have increases." Id.

The CDC identified factors that increase community spread of COVID-19 and individual risk, including crowded situations, enclosed spaces and close or physical contact among people, especially for longer durations. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fcovid-data%2Finvestigations-discovery%2Fhospitalization-underlying-medical-conditions.html (last updated November 29, 2022).

The court recognizes the efforts BOP has taken to prevent and mitigate outbreaks. See BOP Modified Operations, https://www.bop.gov/coronavirus/covid19_status.jsp (last updated November 25, 2020). Nevertheless, despite the efforts to slow the spread of COVID-19 in prisons, the practical reality is many of the factors increasing community spread and individual risk of exposure to the virus are simply unavoidable in a prison setting. Nor can the court ignore the potential of infection when the risk for Mr. Block is significant. The new strains

and variants of COVID-19 only add to the risk and uncertainty. The court recognizes the BOP's implementation of a COVID-19 vaccination program. See BOP: COVID-19 Update, https://www.bop.gov/coronavirus/.

It is evident Mr. Block's treatment at FMC Devens has been successful in treating his chronic kidney disease brought on by excessive physical exercise. With that, Mr. Block is currently in a Care Level 3 classification. It is concerning that Mr. Block is not timely receiving ocular injections prescribed to address his vision issue.

According to the BOP Legal Resource Guide, the BOP "carefully considers the offender's health status" and "provides extensive medical services," so "a defendant's medical condition generally will not preclude a sentence to BOP custody." https://www.bop.gov/resources/pdfs/legal_guide_march_2019.pdf, at p. 27 (last accessed December 21, 2022). Each "inmate is assigned a medical 'Care Level,' based on his . . . medical history as described in the Presentence Report and other available information." Id. By implementing the care level system, the goal "is to assign inmates with greater medical needs to those facilities with more comprehensive on-site medical resources, and to provide more effective and efficient access to community-based health care for each inmate." Id. "Inmates with Care Level 3 needs are fragile outpatients who require frequent clinical contacts, and/or who may require some assistance with activities of daily living, but do not require daily nursing supervision." Id. "This Care Level may include stabilization of medical or mental health conditions

that may require periodic hospitalization. Other examples of this Care Level are patients with cancer in remission less than a year, advanced HIV disease, severe mental illness in remission on medication, severe congestive heart failure, and end-stage liver disease." Id. For Level 3 inmates, "the medical need of the inmate is the primary factor in the designation decision." Id. As a medical center, FMC Devens provides "[a]ll specialty areas of medicine . . . through in-house staff and community-based consultant specialists. Additional services provided at FMC Devens include dialysis treatment for inmates with end-stage renal failure." Id. at p. 28.

While it is true Mr. Block will not recover from his chronic medical condition, it is evident FMC Devens is appropriately addressing the issue and providing him with the medical care and treatment commensurate with that condition. With this record, the court finds Mr. Block cannot meets his burden of proof and presents extraordinary and compelling reasons under § 3582(c)(1)(A)(i).

### 3553(a) Factors

The court concludes the § 3553(a) factors do not support relief. These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from further crimes of the defendant, among others. Id. § 3553(a)(1)-(7).

"[T]he history and characteristics of the defendant," requires the court to consider the defendant as a whole person. Koon v. United States, 518 U.S. 81, 113 (1996). Mr. Block pled guilty to count II of the indictment which charged him with receipt of child pornography by a previous sex offender in violation of 18 U.S.C. § 2252A(a)(2)(A) & (b)(l). (Dockets 17, 58 ¶ C & 63-64). Remaining counts of the indictment charging Mr. Block with sexual exploitation of a minor and distribution of child pornography were dismissed as part of the plea agreement. (Dockets 58 ¶ C & 99 at p. 1).

At sentencing, the court adopted Mr. Block's presentence investigation report without change. (Docket 82 at p. 1). Mr. Block's crime of conviction was his second offense for possession, receipt or distribution of child pornography. (Docket 74 ¶ 41). At the time of sentencing, with a criminal history score of 37, Mr. Block was in a criminal history category of II and the guideline imprisonment range is 235 months to 293 months. Id. ¶ 77.

The court sentenced Mr. Block to a sentence of 240 months. (Docket 99 at p. 2). That sentence reflects the seriousness of his offense, provides appropriate punishment, promotes respect for the law and "protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(2)(A), (B) & (C).

The court finds Mr. Block poses a danger to the public and he is not eligible for compassionate release under 18 U.S.C. § 3582.

**ORDER**

No good cause having been proven, it is

ORDERED that defendant's motion for compassionate release (Docket 103) is denied.

IT IS FURTHER ORDERED that defendant's motion (Docket 120) for appointment of counsel is denied as moot.

Dated February 27, 2023.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE